IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**DAVID L. FOLTZ, JR.,**

    Petitioner,

v.                                            Civil Action No. **3:13CV627**

**HAROLD W. CLARKE,**

    Respondent.

## MEMORANDUM OPINION

David L. Foltz, a Virginia state prisoner proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition") challenging his conviction in the Circuit Court of Arlington, County ("Circuit Court") of abduction with the intent to defile, subsequent offense. In his § 2254 Petition, Foltz argues entitlement to relief based upon the following grounds:

Claim One    The unlawful installation of a global positioning system ("GPS") tracking device "inside the rear bumper" of Foltz's vehicle violated his rights under the Fourth Amendment.[1] (Mem. Supp. § 2254 Pet. 2.)

Claim Two    The unlawful tracking of Foltz's vehicle by the police using the GPS device violated Foltz's rights under the Fourth Amendment.

Claim Three    Foltz's rights under the Fourth Amendment were violated by the admission of the police officers' testimony regarding their tracking and arrest of Foltz because such testimony was the product of the Fourth Amendment violations set forth in Claims Two and Three.

Respondent moves to dismiss the § 2254 Petition. Foltz has responded. (ECF No. 14.) For the reasons explained more fully below, the Court dismisses Foltz's grounds for relief because the Virginia courts provided Foltz with a full and fair opportunity to raise these claims. *See Stone v. Powell*, 428 U.S. 465, 494 (1976).

---

[1] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV.

# I. PROCEDURAL HISTORY

## A. Investigation and Trial

The Supreme Court of Virginia aptly summarized the facts surrounding the investigation as follows:

> Beginning in November 2007, Fairfax County police officers investigated a series of sexual assaults that had similar characteristics. Fairfax County Police Detective Erik Stallings obtained the identities of registered sex offenders who lived and worked in the vicinity of the assaults. David Lee Foltz, Jr. was among the sex offenders identified.
>
> In early January 2008, retired Fairfax County Police Detective James Kraut heard about the assaults and contacted Lieutenant Brenda Akre, supervisor of the Fairfax Police Department sex crimes unit. Kraut told Akre that the recent assaults sounded "amazingly like" the modus operandi of an individual he had investigated in 1990. Kraut could not recall the individual's name, but described the assaults and stated that the person had been convicted and imprisoned in 1990. Akre conferred with another active duty senior detective about the past assaults who told her the person Kraut had investigated was Foltz. Akre relayed this information to Stallings.
>
> Stallings then reviewed Foltz' parole record, driving record and the department's investigative management system, which provided detailed information about Foltz' prior crimes that were similar to the assaults under investigation. The detective also requested an update from the sex offender registry on Foltz' employment status and his current schedule. This information revealed that Foltz was attending probation-related meetings in the vicinity of and at the times of the assaults under investigation. The information also showed that assaults had occurred in the vicinity of Foltz' work and home.
>
> The police initiated physical surveillance of Foltz around 4:00 p.m. on the afternoon of February 6. The officers first observed Foltz as he left his house, driving his personal vehicle. After approximately three hours of surveillance, two of the officers saw Foltz get out of his vehicle and follow a woman walking down a sidewalk in the City of Falls Church. The officers followed Foltz and saw him grab the woman and quickly pull her under a large evergreen tree. The officers intervened to rescue the woman and, after a struggle, arrested Foltz. The Fairfax officers contacted the Falls Church Police Department, which then took custody of Foltz.
>
> Foltz was indicted for violation of Code § 18.2–48, abduction with intent to defile, and Code § 18.2–67.5:3, commission of a subsequent violent sexual assault. Prior to trial, Foltz filed a motion to suppress the testimony of the officers regarding their surveillance of Foltz on the evening of the attack. Foltz argued that the police officers, without first obtaining a search warrant, unlawfully installed the GPS device on his vehicle and unlawfully tracked his movements through use of the device and, therefore, under *Warlick v.*

2

> *Commonwealth*, 215 Va. 263, 208 S.E.2d 746 (1974), the officers' testimony was subject to the exclusionary rule because it was "fruit of the poisonous tree" of an unlawful search in violation of the Fourth Amendment of the United States Constitution and Article 1, Section 10 of the Constitution of Virginia.
>
> The trial court denied the motion, holding that the use of the GPS device did not violate the federal or state constitutions. The trial court limited the officers' testimony to the events they observed on the evening of the assault and the jury was instructed not to speculate about why the officers were following Foltz.
>
> At trial, the officers testified that they observed Foltz driving his own vehicle and stopping in residential areas; that at one point he got out of the car and was seen walking behind a female pedestrian; that he drove on to the City of Falls Church and again exited the car at a Grand Mart store; and that he drove on and ultimately parked his car and followed another female pedestrian for approximately four-tenths of a mile. At that point, according to the officers, Foltz pulled a mask over his face, attacked the woman from behind, moved her off the sidewalk, threw her to the ground under a tree, put his hand over her mouth and prevented her from getting up. One officer testified that Foltz had his hands at the woman's waistline. The officers also testified about their actions in stopping the attack and subduing Foltz.
>
> The victim testified that while she was walking on the sidewalk she was grabbed from behind, dragged under a tree, and pinned to the ground. She testified that the attacker covered her mouth with one of his hands and with his other hand "tried to unbutton my pants." She struggled to "prevent him from doing it," bit the hand that was covering her mouth, and started screaming. When questioned further, the victim explained that Foltz' hand was "[b]elow [her] abdomen." At the court's direction, the victim stood and pointed to the area on her body which Foltz touched. The record reflects that the victim pointed to the exterior of her pants in the vaginal area. The victim also testified that she sustained scratches to her face and mouth in the attack.
>
> Evidence of Foltz' prior rape conviction was presented to establish the elements of the charged violation of Code § 18.2–67.5:3, a subsequent sexually violent assault.
>
> Foltz was convicted by a jury in the Circuit Court of Arlington County and sentenced to life imprisonment.

*Foltz v. Commonwealth*, 732 S.E.2d 4, 5–7 (Va. 2012) (alterations in original).

**B.     Direct Appeal**

Thereafter, Foltz unsuccessfully sought to challenge his conviction in the Court of Appeals of Virginia. *Id.* at 7 (citation omitted). On appeal to the Supreme Court of Virginia, "Foltz argued that the Court of Appeals erred in not declaring the placement and use of the GPS

device unconstitutional and in holding that the officers' testimony was admissible." *Id.* Subsequent to Foltz's filing of his appeal,

> the United States Supreme Court decided *United States v. Jones*, 565 U.S. ——, 132 S. Ct. 945, 181 L.Ed.2d 911 (2012), holding that the government's placement of a GPS tracking device on the bumper of a vehicle and its use of that device to monitor the vehicle's movements is a "classic trespassory search" which, in the absence of a valid search warrant, is a violation of the Fourth Amendment to the United States Constitution. *Id.* at ——, ——, 132 S. Ct. at 949, 954.

*Id.* The Supreme Court of Virginia then concluded that, under *Jones*, "the installation of the GPS device on Foltz' work van and the use of that device to gather information about Foltz' movements by the police, without a valid search warrant, constituted an unconstitutional search. The issue now before this Court is whether the admission of the officers' testimony was error." *Id.*

The Supreme Court of Virginia then assumed that the admission of the officers' testimony was error, but found that such error was harmless beyond a reasonable doubt. *Id.* The court explained its reasoning as follows:

> Conviction of the charges in violation of Code § 18.2–48 required proof beyond a reasonable doubt that Foltz, by force and without legal justification or excuse, transported the victim with the intent to deprive the victim of her personal liberty and with the intent to sexually molest her, *Crawford*, 281 Va. at 102–03, 704 S.E.2d at 118, and that this assault was subsequent to a previous conviction for a sexually violent assault, from which Foltz was at liberty, and that the previous conviction was not part of a common act, transaction or scheme with this offense. Code § 18.2–67.5:3. There was no dispute that Foltz assaulted the victim, that he had previously been convicted of rape, and that he was at liberty from that conviction at the time of the offense at issue here.
> The victim testified unequivocally that she was attacked from behind by force, that she was dragged to a place off the sidewalk on which she had been walking, that she was deprived of her liberty because she was pinned on the ground by her attacker, and that her attacker placed his hand on her pants in the area of her vagina. The Commonwealth, at trial and in oral argument in this Court, pointed to this testimony as proof that Foltz abducted the victim with intent to defile her.
> There is nothing in the record to suggest that the victim was not a credible witness. Her testimony regarding the attack and Foltz' intent was clear and

4

> specific. She believed he was going to "do it." She testified and demonstrated that he was attempting to sexually molest her. The testimony of the officers regarding the assault was cumulative of the victim's own testimony. The officers' testimony regarding Foltz' conduct for the hours prior to the assault may have supported the theory that Foltz was stalking or following female pedestrians, but it did not extend to indicating the purpose of his stalking—whether to rob, assault, sexually molest, abduct or engage in some other activity. Based on this record, admission of the officers' testimony was harmless beyond a reasonable doubt.

*Id.* at 7–8.

## II. ANALYSIS

The United States Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976) (footnote omitted). This rule also applies to evidence, such as the officers' testimony here regarding the tracking and apprehension of Foltz, that is the fruit of an alleged Fourth Amendment violation. *Boggs v. Bair*, 892 F.2d 1193, 1200 (4th Cir. 1989); *Jones v. Superintendent of Rahway State Prison*, 725 F.2d 40, 42 (3d Cir. 1984) (citation omitted) (holding that "consideration of a claim that evidence admitted at trial was the fruit of an illegal arrest could not be considered on a habeas corpus petition so long as the state courts had afforded a full and fair opportunity to litigate that claim.").

"The rationale for the [Supreme Court's ruling in *Stone*] was that, in the context of a federal habeas corpus challenge to a state court conviction, 'the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal and the substantial societal costs of the application of the rule persist with special force.'" *United States v. Scarborough*,

777 F.2d 175, 182 (4th Cir. 1985) (quoting *Stone*, 428 U.S. at 494–95).[2] Therefore, in a habeas proceeding, when a federal district court is faced with Fourth Amendment claims, it should "first inquire as to whether or not the petitioner was afforded an opportunity to raise his Fourth Amendment claims under the then existing state practice." *Doleman v. Muncy*, 579 F.2d 1258, 1265 (4th Cir. 1978) (capitalization corrected). If the state has provided the petitioner with an opportunity to raise his Fourth Amendment claims at trial and on appeal, this Court need not inquire further "unless the [petitioner] alleges something to indicate that his opportunity for a full and fair litigation of his Fourth Amendment claim or claims was in some way impaired." *Id.* (citation omitted).

Because Virginia provided Foltz with an opportunity to raise his Fourth Amendment claims at trial and on appeal, this Court need not inquire further unless Foltz demonstrates "that his opportunity for a full and fair litigation of his Fourth Amendment claim or claims was in some way impaired." *Id.* The United States Court of Appeals for the Fourth Circuit has admonished that "the burden of pleading and proof is upon [the petitioner] to indicate in the petition . . . the reasons he has, and the facts in support thereof, as to why he contends he did not receive an opportunity for a full and fair litigation of his Fourth Amendment claims." *Id.* at 1266 (capitalization corrected).

Foltz contends that he "did not receive a full and fair [opportunity for] consideration of his search–and–seizure claims . . . because the proper constitutional case law to the facts, *i.e.*, *United States v. Jones*, 565 U.S. __ (2012) had not been decided." (Mem. Supp. § 2254 Pet. 14–15.) Factually, Foltz is not correct. As reflected above, the Supreme Court of Virginia

---

[2] The exclusionary rule "deflects the truthfinding process and often frees the guilty," *Stone*, 428 U.S. at 490, therefore it "has been restricted to those areas where its remedial objectives are thought most efficaciously served." *Id.* at 486–87 (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)).

considered the impact of *Jones* when resolving Foltz's Fourth Amendment claims.[3] Moreover, a change in the relevant precedent during the course of Foltz's litigation of the Fourth Amendment claims in state court does not render his opportunity to litigate the claims less than full and fair for purposes of *Stone*. *Boggs*, 892 F.2d at 1199–1200. Thus, Foltz fails to demonstrate that he did not receive a full and fair opportunity to litigate his Fourth Amendment claims in state court. Accordingly, the rule in *Stone v. Powell* precludes Foltz from obtaining habeas relief based on the Fourth Amendment claims he presents here. Foltz's claims will be DISMISSED.

For the foregoing reasons, Respondent's Motion to Dismiss (ECF No. 10) will be GRANTED. The § 2254 Petition will be DENIED. The action will be DISMISSED. A certificate of appealability will be DENIED.[4]

An appropriate Final Order shall issue.

Date: 8/22/14
Richmond, Virginia

/s/ *John A. Gibney, Jr.*
United States District Judge

---

[3] The Fourth Circuit has emphasized that "the ultimate rule of deference" contemplated by *Stone* "would of course be swallowed if impairment in this sense could be shown simply by showing error—whether of fact or law—in the state court proceeding." *Sneed v. Smith*, 670 F.2d 1348, 1355–56 (4th Cir. 1982).

[4] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Foltz fails to meet this standard.